UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH MORTON, *et al.*<br><br>*Plaintiff,*<br><br>v.<br><br>DTIQ TECHNOLOGIES, INC.,<br><br>*Defendants.* | Civil Action No.: 1:25-cv-12271-ADB |

**DEFENDANT DTIQ TECHNOLOGIES INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant DTiQ Technologies, Inc. ("DTiQ" or "Defendant") seeks dismissal of the Class Action Complaint (Doc No. 1, "Complaint") of Plaintiffs Elizabeth Morton ("Morton") and Kevin O'Brien ("O'Brien") (collectively, "Plaintiffs") for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

I. **SUMMARY**

Beginning in December 2024, DTiQ was the alleged victim of a cybersecurity incident involving its computer network (the "Incident"). Plaintiffs Morton and O'Brien received notice from DTiQ that their personal information may have been involved in the Incident. After receiving this letter, Plaintiffs initiated this action against Defendant asserting five causes of action on behalf of themselves and a putative class of similarly situated individuals. However, the Complaint does not establish that either Morton or O'Brien has suffered any cognizable harm that is traceable to the Incident, and therefore, Plaintiffs do not have Article III standing to maintain their claims.

Even if this Court finds that either of the Plaintiffs have Article III standing, the Complaint does not contain well-pleaded facts sufficient to establish the requisite elements of their purported

1

causes of action. Thus, in the alternative, Defendant requests that the Court dismiss the Complaint for failure to state a claim under Rule 12(b)(6). For the above reasons, Plaintiff's Complaint must be dismissed in its entirety.

## II.  RELEVANT FACTUAL BACKGROUND[1]

### A.  The Alleged DTiQ Cyber Incident

DTiQ, which has its headquarters in Marlborough, Massachusetts, provides video surveillance and loss prevention solutions for businesses in the restaurant, retail, and convenience store industries. *See* Compl. ¶¶ 1, 16, 20. In January 2025, DTiQ discovered suspicious activity in its computer network and immediately began an investigation. *See* Compl. ¶ 1, 3; Ex. A at 1. In response to this criminal activity, DTiQ took immediate action to secure its environment and conducted an internal review to determine whether any information was affected. *Id*.

Through its investigation and review, DTiQ determined that the personal information of approximately 4,700 individuals was contained in the systems impacted by the Incident. *Id*. The information included individuals' name, Social Security number ("SSN"), and bank account information. *See* Compl. ¶ 3, Ex. B. By letter dated July 25, 2025, DTiQ began notifying individuals whose information may have been contained in the impacted portions of DTiQ's network. *See* Compl. Ex. A and B. Together with the notification letter, DTiQ provided individuals with free access to one year of credit monitoring and identity theft protection services. *Id*.

### B.  The Allegations of the Complaint

The Complaint contains 176 paragraphs and five separate causes of action on behalf of two named plaintiffs; but it does not contain any allegations of a cognizable injury that is traceable to

---

[1] For the purposes of this motion only, all well-pled facts of the Complaint are treated as true. However, DTiQ does not admit the truth of any allegations in the Complaint and cites them here solely for purposes of this Motion.

the Incident. Instead, Plaintiffs assert mostly speculative future harms, as well as a single instance of alleged fraud involving a credit card that was not impacted by the Incident.

Despite receiving free credit monitoring services from DTiQ, Plaintiffs do not allege that they enrolled in or utilized these services, nor do they allege that they actually incurred any out-of-pocket costs or financial losses. Instead, Plaintiffs speculate that they are at risk of future harm and that they anticipate spending time responding to the Incident. *See, e.g.*, Compl. ¶ 87. Further, Plaintiffs claim that the Incident "exposed Plaintiffs' and the Class's PII for theft and sale on the dark web," without alleging or providing evidence that their information was actually published on the "dark web." *See* Compl. ¶ 33. Neither Plaintiff provides a significant factual basis for these claims, and the same applies to each category of alleged harm asserted in the Complaint.

### 1. Plaintiff O'Brien

Plaintiff O'Brien is a former employee of DTiQ who provided his name, SSN, and bank account information to DTiQ in connection with his employment. Compl. ¶ 57. Plaintiff O'Brien was notified that his SSN and bank account may have been affected by the Incident. *See* Compl. Ex. A, at 1, and B, at 1. As a result of the Incident, he alleges the following injuries or damages:

- "Defendant exposed Plaintiff O'Brien's PII for theft by cybercriminals and sale on the dark web." Compl. ¶ 61.
- "damages to and diminution in the value of his PII." Compl. ¶ 64.
- "Plaintiff has spent time and made reasonable efforts to mitigate the impact of the [Incident by]…researching the [Incident], reviewing credit card and financial account statements, and monitoring his credit information." Compl. ¶ 65.
- "Plaintiff O'Brien has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft." Compl. ¶ 66.
- "a substantial increase in spam and scam phone calls and text messages…" Compl. ¶ 67.
- "anxiety, sleep disruption, stress, fear, and frustration." Compl. ¶ 68.
- "present and continuing risk of fraud, identity theft, and misuse…" Compl. ¶ 69.

3

On behalf of himself, Plaintiff Morton, and a putative class of similarly situated individuals, Plaintiff O'Brien asserts claims against Defendant for Negligence, *see* Compl. ¶¶ 112-132; Negligence *Per Se*, *see* Compl. ¶¶ 133-142; Breach of Implied Contract, *see* Compl. ¶¶ 143-157; Unjust Enrichment, *see* Compl. ¶¶ 158-163; and Invasion of Privacy, *see* Compl. ¶¶ 164-176.

### 2. Plaintiff Morton

Plaintiff Morton allegedly provided DTiQ with her Name, SSN, and bank account information during her employment. Compl. ¶ 72. Her claims concerning her alleged damages largely mirror those of Plaintiff O'Brien. *See* Compl. ¶¶ 75, 78-83.

Plaintiff Morton also claims that she experienced "attempts by an unknown third party (or parties) to make unauthorized payments…involving her Southwest Visa Credit Card." Compl. ¶ 84. Notably, Plaintiff Morton does not allege or prove: (1) that any of these "attempts" were successful, (2) that she suffered any actual loss as a result of these attempts, (3) that DTiQ was in possession of information related to her Southwest Visa credit card, or (4) that the credit card was impacted by the Incident.

### III. ARGUMENT

#### A. Plaintiffs Lacks Standing to Pursue Their Damage Claims

##### 1. Legal Standard

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. *In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-MD-03083-ADB-PGL, 2024 WL 5092276, at *2 (D. Mass. Dec. 12, 2024) (Burroughs, J.) (citations omitted). To establish standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by

a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) ("To satisfy this standing requirement, a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability.").

Approximately one year ago, this Court described the proper legal standard for a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1):

> On a motion to dismiss for lack of subject matter jurisdiction ..., 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.' " *Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1, 4–5 (D. Mass. 2020) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)); *see also Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012) ("Article III standing presents a question of justiciability; if it is lacking, a federal court has no subject matter jurisdiction over the claim."). Dismissal is appropriate only when the well-pleaded allegations in the complaint, taken as fact and given all reasonable inferences, do not support a finding of federal subject matter jurisdiction. *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009).

*In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *2 (footnote omitted).

### 2. Plaintiffs Have Not Alleged an Injury-in-Fact

To establish Article III standing, a plaintiff must allege an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). *See Kerin*, 770 F.3d at 981. "A concrete injury must be *de facto*; that is, it must actually exist" and it must be "real, and not abstract." *Id.* at 340 (internal citations and quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

#### i. *Actual Misuse of Data is Required to Establish Standing*

The Supreme Court, as well as courts in the First Circuit and this District, have held that a plaintiff *may* establish Article III standing by showing that their personal information has been misused as a result of the defendant's conduct. In *TransUnion, LLC v. Ramirez*, a class of 8,185

5

individuals brought claims against TransUnion for violation of the Fair Credit Reporting Act. Although TransUnion processed false and defamatory credit reports for all class members, it only disclosed the reports of 1,835 class members to third-party businesses. *Id.* The Supreme Court found that those class members had Article III standing, since their claims were akin to the common law tort of defamation. *Id.* at 2209. TransUnion had not disclosed the inaccurate reports of the remaining class members to any third parties, and although those class members contended that they were at risk of future disclosure, the Supreme Court found that they lacked standing. *Id.* The Supreme Court held that in a suit for damages, "the mere risk of future harm, without more, cannot qualify as a concrete harm" sufficient to establish standing. Id. at 2211 (emphasis added). Instead, a plaintiff must show that the harm actually materialized. *Id*.

Finally, the Supreme Court rejected the contention that the risk of future disclosure of an inaccurate credit report could serve as a concrete harm constituting an injury-in-fact:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does not materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*Id*. at 2211 (emphasis in original).

Cases subsequently applying *TransUnion* in the data breach context have held that a plaintiff must allege actual misuse of information involved in the incident to establish standing. In *Webb*, the First Circuit held that the named plaintiff plausibly alleged a concrete injury and had standing based upon her allegation that, "the data breach resulted in the misuse of her PII by an unauthorized third party (or third parties) to file a fraudulent tax return." *Id*. at 373. The court distinguished the plaintiff's allegation of actual harm from a prior First Circuit case—*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012). The plaintiff in *Katz* did not allege that her personal

6

information had been accessed or misused, and therefore, her alleged injury was not actual or imminent. *See id*. at 79; *see also Webb*, 72 F. 4th at 373 ("We distinguished [*Katz*] from those in which confidential data actually <u>has been accessed</u> through a security breach and persons involved in that breach <u>have acted on the ill-gotten information</u>.") (emphasis added).

      A few months after the First Circuit's decision in *Webb,* the United States District Court for the District of Massachusetts applied its guidance to another alleged data breach case.  In *Taylor v. UKG, Inc.*, 2023 WL 8291834 (D. Mass. Sept. 15, 2023), the court dismissed the plaintiffs' claims, holding that "without any allegation of actual misuse of information from the [ ] data breach, Plaintiffs' alleged risk of future misuse is not sufficiently imminent or substantial to support standing."  *Id.* at *6. Similar claims were dismissed in *Hartigan v. Macy's, Inc.*, 501 F. Supp. 3d 1 (D. Mass. 2020), where a customer brought claims against Macy's after a criminal cyberattack exposed customer information.  The court dismissed the plaintiff's claims, finding that he had "not alleged sufficient facts to support a substantial risk of future harm" necessary to support his claim "under the caselaw most generous" to plaintiff.  *Id.* at 5.

      In the case at bar, neither Plaintiff plausibly alleges misuse of any of their information as a result of the Incident. Plaintiff O'Brien does not allege that he has suffered any instance of identity theft or financial fraud since the Incident, and therefore cannot show any misuse of his data. As Plaintiff Morton's allegations of "attempts" at fraudulent charges to her credit card merely establish the misuse of that credit card, *see* Compl. ¶¶ 84, 88; they do ***not establish misuse of data that was involved in the Incident***. The Complaint makes no allegation that she ever provided credit card information to DTiQ, much less the specific Southwest Visa card at issue. *See id*.

      In other words, Morton's claims suffer from a lack of "traceability" to the Incident. As this Court has noted, "plaintiffs asserting federal standing must also plausibly allege that their injury

7

is fairly traceable to the challenged action of the defendant." *In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *11 (quoting *Lujan*, 504 U.S. at 560). "The traceability or causation element requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." (citing *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, LLC*, 958 F.3d 38, 47 (1st Cir. 2020); *Katz*, 672 F.3d at 71). In *Harvey, supra*, the court dismissed a data breach class action complaint for lack of standing where plaintiff's allegation of data misuse was implausible and therefore failed the "traceability" requirement. 2025 WL 928776, at *3. There, the sole allegation of data misuse related to the fraudulent filing of an LLC in the plaintiff's name, but the complaint did not, "allege that [plaintiff] provided [defendant] with his mailing address…a necessary piece of information to create an LLC." Plaintiffs' Complaint does not establish a connection between the Incident and the credit card at issue. Morton cannot establish any instance of data misuse that is "fairly traceable" to the DTiQ incident.[2]

### ii. Plaintiffs Cannot Establish Any "Risk of Harm" Sufficient to Confer Standing

The *Webb* court held that in the absence of actual misuse, a plaintiff may establish standing by plausibly alleging, "the material risk of future misuse of [plaintiff's] PII and a concrete harm caused by exposure to this risk." *In re MOVEit*, 2024 WL 5092276, at *4 (citing *Webb*, Webb, 72 F.4th at 374.). Whether the plaintiff can meet this burden depends upon the totality of the circumstances, but particularly on a consideration of three factors:

1) Whether the data at issue was stolen in a targeted attack;

---

[2] In the *MOVEit* decision, this Court took issue with similar arguments by the defendants in their Motion to Dismiss. *See* 2024 WL 5092276, at *11-12. There, the Complaint included an allegation that one of the plaintiffs suffered an attempted instance of identity theft when an unauthorized person applied for a loan in his name, and the Court noted that the information impacted by the underlying incident could have assisted the criminal actors. *See id.* at 11. However, here, Plaintiff Morton does not allege that her personal information was misused in order to *apply* for the credit card at issue—she alleges that a credit card legitimately in her name was used for fraudulent transactions. This could only have occurred if an unauthorized third party obtained the actual credit card information, and the Complaint does not allege or establish that the Incident resulted in the exposure of that information.

      2) Whether some of the information has already been misused; and

      3) Whether the stolen data was highly sensitive.

*See Webb*, 72 F.4th at 375-76.

Even providing Plaintiffs with all reasonable inferences, their Complaint fails to establish the first two factors. First, the Complaint is devoid of detailed allegations about the Incident, such as the identity of the criminal actors involved, the method or type of cyberattack, and whether any information was actually accessed or stolen.[3] Next, as set forth in the previous section, the Complaint does not establish any misuse of the Plaintiffs' personal information that is traceable to the Incident. In *Webb* and *In re MOVEit*, at least one of the named plaintiffs alleged a specific instance of misuse of their data that was traceable to the underlying incident, and the court allowed the other named plaintiffs to rely on such allegations of evidence that their own data was at a substantial risk of misuse. *See, e.g., Webb*, 72 F.4th at 376. ("That at least some information stolen in a data breach has already been misused also makes it likely that other portions of the stolen data will be similarly misused.") (citations omitted). Unlike the plaintiffs in those cases, neither of the Plaintiffs here can rely on evidence of the other's data misuse, since the Complaint does not contain any plausible allegations of data misuse caused by the Incident.

Even if Defendant concedes that the data at issue here—name, SSN, bank account information—is highly sensitive, that fact cannot allow Plaintiffs to establish standing in light of the analysis of the other two factors. If the third factor alone was sufficient to establish standing, the first two factors would be rendered useless and superfluous, an absurd result that ignores the totality of the circumstances and the reasoned analysis regularly conducted by this and other courts.

---

[3] By contrast, the complaint in such cases often alleges the identity of the "threat actor" group responsible for the attack, the methods used by the threat actor to conduct the attack and/or access the defendant's network, and evidence of the group's *modus operandi*, which may allow the parties and the court to assess the risk of harm related to the incident. *See, e.g. In re MOVEit*, 2024 WL 5092276, at *5.

### B. Plaintiffs Do Not Have Article III Standing to Seek Injunctive Relief

In their Complaint, Plaintiffs make passing reference to potential injunctive relief and appear to seek such relief. *See* Compl. ¶¶ 111, 174; Prayer For Relief, p. 20. Despite their failure to articulate the nature of the relief sought or a connection between injunctive relief those and the Incident, Defendants assume for purposes of this Motion that the Complaint affirmatively seeks some form of injunctive relief. As with Plaintiffs' substantive claims for damages, any claims for injunctive relief must be dismissed for lack of Article III standing.

"Standing for injunctive relief depends on whether [the plaintiffs are] likely to suffer future injury." *Webb*, 72 F.4th at 378 (quoting *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 276 (1st Cir. 2022); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). As noted above, Plaintiffs have not suffered identity theft, fraud, or any other materialized harm. Additionally, the three-factor analysis the court may conduct pursuant to *Webb* leads to the conclusion that any risk of harm to Plaintiffs is not imminent or substantial. As the Supreme Court explained in *TransUnion*, a plaintiff may rely on a potential future injury to establish standing to seek "forward-looking" injunctive relief, "at least so long as the risk of harm is sufficiently imminent and substantial." 141 S. Ct. at 2210 (internal citations omitted). Defendants have established herein that Plaintiffs' risk of harm as a result of the Incident is not "substantial and imminent" and Plaintiffs have not identified any "forward-looking" relief that would potentially alleviate any purported risk. Consequently, Plaintiffs do not have standing to pursue injunctive relief. *See Campos v. TJX Companies, Inc.*, No. 24-CV-11067-ADB, 2025 WL 360677, at *3 n.1 (D. Mass. Jan. 31, 2025) ("Plaintiff has not alleged any facts to indicate that [defendant's] behavior presents a risk of future harm, as all of the alleged conduct has occurred in the past. As such, Plaintiff lacks standing to

pursue injunctive relief…"); *Webb,* 72 F.4th at 378 ("plaintiffs lack standing to pursue [injunctive] relief because their requested injunctions are not likely to redress their alleged injuries.")

### C. Plaintiffs Have Failed to State Claims Upon Which Relief Can Be Granted

Even if the Court were to determine that Plaintiff had standing to bring her claims, the Complaint must nevertheless be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to sufficiently state her claims.

#### 1. Plaintiffs Have Failed to State a Claim for Negligence

To prevail on a negligence claim, the plaintiff must prove that (1) the defendant owed the plaintiff a duty of reasonable care, (2) the defendant breached that duty, (3) damage resulted, and (4) that there was a causal relationship between the breach of the duty and the damage. *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 39 (2009).

Plaintiffs' negligence claim fails because (i) Plaintiffs cannot satisfy the third and fourth elements without actual injury, (ii) it is barred by the economic loss doctrine, and (iii) Plaintiffs have not alleged physical harm manifested by objective symptomatology sufficient to sustain a claim based upon their alleged feelings of "anxiety, sleep disruption, stress, fear and frustration." Compl. ¶¶ 68, 82.

As an initial matter, as explained above, Plaintiffs have not pled actual damages or drawn a plausible connection between the conduct of Defendant and any actual injury or damages. Under such circumstances, they cannot sustain a claim for negligence. *Cannon v. Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978) ("A cause of action based on negligence requires that both negligence and harm be shown, with a causal connection between these two elements."); *Bernal v. Weitz*, 54 Mass. App. Ct. 394, 396 (2002) ("Actual damages or loss are an essential element of the tort of negligence").

Next, Plaintiffs' negligence claim is also barred by the economic loss doctrine. "[T]he economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 469 (2009). "[P]urely economic losses are unrecoverable in tort… actions." *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993). Plaintiffs have not alleged any physical harm or property damage and thus she cannot state a claim for negligence.

Finally, the vague and unsupported allegations of "anxiety" and "stress" cannot save Plaintiffs' claims. In making such claims, Plaintiffs are actually asserting a claim of negligent infliction of emotional distress ("NIED"). In order to recover for such a claim, a plaintiff must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 133 (1993), *quoting Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982). The Supreme Judicial Court explained that it

> added the physical harm requirement to the traditional elements of negligence for several reasons. First, we feared that allowing recovery for mental harm alone might result in a flood of fraudulent claims. Second, we expressed concern that even honest plaintiffs erroneously might convince themselves that they suffer from emotional distress as a result of the negligence of others, thereby compounding the problem of fraudulent lawsuits. Finally, we reasoned that the unintentional nature of the defendant's tortious conduct justified the imposition of an additional legal burden on the plaintiffs.

*Sullivan, supra* (internal citations omitted). For these reasons, a "successful negligent infliction of emotional distress claim… must do more than allege mere upset, dismay, humiliation, grief and anger." *Id.* at 137 (citation omitted). Such a claim "requires specific factual allegations, not a

mere 'formulaic recitation of the elements.'" *Hindle v. Toyota Motor Credit Corp.*, 2018 WL 6033484, at *4 (D. Mass. Nov. 16, 2018), *quoting Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs cannot meet the standards necessary for a claim for NIED and the Supreme Judicial Court's warnings about frivolous litigation are particularly apt here. Specifically, Plaintiffs has not pled physical harm manifested by objective symptomatology. The Court should not be sidetracked by Plaintiff's subjective and vague statements of emotional distress – courts, as should be the case here, regularly dismiss similar unsupported allegations. *See Arroyo v. City of Boston*, 2021 WL 2338879, at *8 (D. Mass. June 8, 2021) (dismissing NIED claim where plaintiff "alleged in skeletal fashion, that as a result of Defendants' conduct, he 'has suffered physical, emotional, and economic injuries'"); *Axford v. TGM Andover Park, LLC*, 2021 WL 681953 (D. Mass. Feb. 22, 2021) (plaintiffs' NIED claims based on allegations of "extreme discomfort mentally [and] physically" lacked "objective support" and were therefore dismissed); *Nasir v. Town of Foxborough*, 2020 WL 1027780, at *5 (D. Mass. Mar. 3, 2020) (allegations that plaintiffs "were, and remain[ ], noticeably distressed" insufficient to state a claim for NIED); *Hindle, supra* (dismissing NIED claim where plaintiffs alleged "that they experienced a 'great deal of stress and anxiety' and that their emotional distress 'manifested itself in physical symptoms.'"); *Doe v. Emerson Coll.*, 153 F. Supp. 3d 506, 517 (D. Mass. 2015) (dismissing NIED claim where "complaint allege[d] that the defendants' negligence caused her 'pain and suffering' without any description or explanation of how that emotional distress has manifested in physical symptoms"); *Pierre v. U.S.*, 741 F. Supp. 306, 313 (D. Mass. 1990) (dismissing NIED claim where there no objective allegations of physical symptoms); *see also Polay v. McMahon*, 10 N.E.3d 1122, 1130 (2014) (discounting plaintiffs' allegation that "the emotional distress suffered... was severe and of

such a nature that no reasonable person could be expected to endure it" as a formulaic recitation of the elements of intentional infliction of emotional distress).

For all of the above reasons, Plaintiffs' negligence claim must be dismissed.

### 2. Plaintiffs Have Fail to State a Clam for Negligence *Per Se*

Count II of the Complaint asserts a claim on behalf of Plaintiffs and the putative class for Negligence *Per Se*. Complaint ¶¶ 133-142. However, it is well-settled that Massachusetts law does not recognize negligence *per se* as a separate cause of action. *Juliano v. Simpson*, 962 N.E.2d 175, 179 (Mass. 2012) ("The Commonwealth does not follow the doctrine of negligence per se[.]"). Therefore, Count II of the Complaint should be dismissed with prejudice. *See Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 149 (D. Mass. 2024) (dismissing negligence *per se* claim because, "Massachusetts does not recognize negligence per se as an independent cause of action").

### 3. Plaintiffs Have Failed to State a Claim for Breach of Implied Contract

"[A]n implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties." *T.F. v. B.L.*, 442 Mass. 522, 526-527 (2004).  To prevail on a claim for breach of implied contract, a plaintiff must provide "proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected that he or she would have to pay for that benefit." *Id.* "A contract implied in fact requires the same elements as an express contract and differs only in the method of expressing mutual assent." *Mass. Eye & Ear Infirmary v. QLT Phototerapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (quotation omitted).

Plaintiffs allege that they provided their private information to DTiQ in as a condition of their employment. Compl. ¶ 144. Based on this exchange, DTiQ allegedly promised and represented that they would safeguard Plaintiffs' information. Compl. ¶ 145.. While such

14

allegations may be accepted as true, they are insufficient to demonstrate there was a bargained for exchange between herself and Apsire.

The decision on remand in *Webb v. Injured Workers Pharmacy, LLC* is instructive. There, the plaintiffs alleged a variety of common causes of action arising out of the alleged exposure of their personal health information by the defendant pharmacy. The court dismissed the claim for breach of implied contract because "there is no allegation that [defendant] agreed – explicitly or implicitly – to provide such protection" of their personal information. 2023 WL 5938606, at *3 (D. Mass. 2023).

A similar result was reached in *Weekes v. Cohen Cleary P.C.* There, the court dismissed a breach of implied contract claim where a plaintiff alleged that "defendant law firm required her to disclose PII and PHI as a condition of its representation" but made "no allegation, however, that either party ever discussed the manner of safeguarding the PII and PHI or that plaintiff had a particular concern about disclosing that information." 2024 WL 1159642, at *5 (D. Mass. Mar. 15, 2024).

The same is true here. Nowhere in the Complaint does Plaintiffs refer to any actual conduct by DTiQ in which DTiQ represented that Plaintiff's information would be kept safe. Instead, Plaintiff's Complaint simply asserts Defendant made a promise without any further specifics as to how or when that promise was made. The claim must therefore be dismissed.

Courts across the country have regularly reached the same conclusion in data privacy cases. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022) (dismissing plaintiffs' implied contract claim because the "allegations reveal only that [plaintiffs] provided their personal information as required to receive healthcare services from Defendant" hence there was not "meeting of the minds." ); *Griffey v. Magellan Health Inc.*, 562

F. Supp. 3d 34, 51 (D. Ariz. 2021) (dismissing an implied contract claim because plaintiff "fail[ed] to allege specific terms of the implied contract" such as "when and to what extent" the contract applied."); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *20 (D.N.J. Dec. 16, 2021) (finding that defendant's privacy policy was not enough to establish an implied contract because "[d]efendants [didn't] ma[ke] any implicit promise to protect Personal Information from third-party hackers or provide notice of a data breach beyond its [legal] obligations."); *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015) (dismissing a breach of implied contract claim where any such contract would have "involved the provision of and payment for food, not a promise to safeguard to customer's credit or debit card information.") . *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (a company's unilateral statements "that its servers were protected by a secure firewall and that customers' data was safe… do not create any contractual obligations.")

Even if the Court found that mutual assent existed to create a contract between the parties, the Complaint is free of any facts that would support Plaintiff incurred damages. Like an express contract, a finding for a breach of implied contract requires a plaintiff to prove damages. *Katz v. Pershing*, LLC, 806 F. Supp. 2d 452, 460 (1st Cir. 2011) ("To allege an implied-in-fact contract, a plaintiff must plead the elements of an express contract, including consideration, mutual assent and damages."). In data breach cases courts have required plaintiffs to "allege more than legal conclusions and vague statements to establish actual damages to support [a] breach of contract" claim. *Sallie Holly v. Alta Newport Hosp., Inc*, 2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020); *see also Burns v. HSBC Bank*, 2013 WL 12136377, at *5 (C.D. Cal. Aug. 26, 2013) ("vague and conclusory statements regarding damages are insufficient to survive a motion to dismiss.").

Similarly, Plaintiff's Complaint lacks supporting facts to establish her alleged damages. Her breach of implied contract claim must therefore be dismissed.

### 4. Plaintiffs Have Failed to State a Claim for Unjust Enrichment

Massachusetts defines unjust enrichment as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005) (quoting *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982)). A plaintiff must establish that "not only [did] the defendant received a benefit, but also that such as benefit was unjust." *Webb*, 2023 WL 5938606, at *4, *quoting Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013).

Plaintiffs' unjust enrichment claim mirrors that dismissed in *Webb*. There, the plaintiffs alleged that "their payments for pharmaceutical services implicitly included the costs entailed in the protection of their PII." 2023 WL 5938606, at *4. As a result, the defendant was allegedly unjustly enriched because it did not take "adequate steps to secure [plaintiffs'] data." *Id.* The court disagreed, dismissing the plaintiffs' unjust enrichment claim reasoning that the "Plaintiffs paid [defendant] for (and received) pharmaceutical services; they do not allege they paid separately for storage of their PII." *Id.* The same is true and thus the same result is required.

Moreover, Plaintiff's assertions mischaracterize the import of their personal information in the employment context. Compl. ¶¶ 205-211. Even if the Plaintiffs provided their personal information as condition of their employment, they have not explained how providing that information constitutes a "benefit" to DTiQ. DTiQ collected that information for business and operations purposes, such as payroll and other administrative functions. DTiQ did not otherwise receive any direct benefit from this information. While their information was necessary for the overall operation of DTiQ's business, Plaintiffs' incentive for providing their information to DTiQ

17

was not for DTiQ's data security but rather for the promise of employment and compensation. Even if providing their information constituted some distinct benefit, Plaintiffs received consideration for any such benefit by virtue of their compensation received from DTiQ.

A finding of unjust enrichment cannot exist where the plaintiff received the services for which they paid and defendant has not received any benefit. Most importantly, Plaintiffs have not alleged the concrete damages necessary to support any contract or unjust enrichment claim. Their allegations of speculative future harm cannot establish the actual damages required for these claims. Applying these principles here, the court should dismiss Plaintiff's fourth cause of action for unjust enrichment.

### 5. Plaintiffs Have Failed to State a Claim for Invasion of Privacy

Count V of the Complaint asserts a claim for Invasion of Privacy. Compl. ¶¶ 164-176. Plaintiffs allege that they provided their sensitive personal information to DTiQ and had a reasonable expectation of privacy with regard to that information. Compl. ¶ 165. Further, they allege that Defendant owed them a duty to safeguard their information, but that the Incident resulted in the unauthorized acquisition of that information, which is, "highly offensive to a reasonable person." Compl ¶ 167.

"Massachusetts has never recognized a common-law cause of action for invasion of privacy, but recognizes an actionable right of privacy under the privacy statute." *Webb v. Injured Workers Pharmacy, LLC*, No. 22-CV-10797, 2023 WL 5938606, at *4 (D. Mass. Sept. 12, 2023) (quoting *Axford v. TGM Andover Park, LLC*, 2021 WL 681953, at *13 (D. Mass Feb. 22, 2021)). The relevant statute is Mass. Gen. Laws ch. 214, § 1B, which provides that, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."

A claim under common law for invasion of privacy requires proof that the defendant gathered and disseminated facts of a private nature, resulting in an unreasonable, substantial, or serious interference with the plaintiff's privacy. *Burns v. City of Worcester*, 772 F. Supp. 3d 109, 144 (D. Mass. 2025) (citing *Branyan v. Sw. Airlines Co.,* 105 F. Supp. 3d 120, 126 (D. Mass. 2015); *Nelson v. Salem State Coll.*, 446 Mass. 525, 845 N.E.2d 338, 348 (2006)). Invasion of privacy is an intentional tort. *Webb*, *supra*, at *4 (citing *Elliot-Lewis v. Abbott Lab'ys*, 378 F. Supp. 3d 67, 71 (D. Mass. 2019); *White v. City of Boston*, 2022 WL 2704404, at *10 (D. Mass. July 12, 2022)). Courts in data breach class action matters routinely dismiss common law claims for invasion of privacy because the alleged harm did not result from any intentional act by the defendant. *See*, *e.g.*, *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 164 (D. Mass. 2024) ("Plaintiffs' claim does not pass muster because Plaintiffs allege only that <u>hackers</u> disseminated their private information and intruded on their privacy, not that [<u>Defendant</u>] did.") (emphasis in original); *Webb*, *supra*, at *4 (dismissing invasion of privacy claim where the plaintiff, "fails to allege any intentional acts on the part of [defendant] that could be said to have been the legal cause of the dissemination").

The result here should be no different. Even providing Plaintiffs and the allegations of the Complaint all reasonable inferences, Defendant's alleged conduct was, at worst, negligence. Such conduct is insufficient to establish the intentional tort of Invasion of Privacy, and therefore, Count V of the Complaint should be dismissed.

## IV.    **CONCLUSION**

As Plaintiffs implicitly admit, they fortunately have not suffered any actual injury as a result of the Incident. Without actual damages suffered by the Plaintiffs, they lack standing and

cannot state a claim for monetary or injunctive relief. Their claims are otherwise insufficiently pled or unsupported by plausible allegations. For these reasons, the case should be dismissed.

                                              Respectfully Submitted,

Dated: October 3, 2025                    CONSTANGY, BROOKS,
                                              SMITH & PROPHETE LLP

                                              */s/ Christopher R. Deubert*
                                              Christopher R. Deubert
                                              800 Boylston St., Suite 1005
                                              Boston, MA 02199
                                              Ph: 617.849.7880
                                              cdeubert@constangy.com

                                              Joseph McNelis (**P***ro* **H***ac* **V***ice*)
                                              1650 Market St., 36th Floor
                                              Philadelphia, PA 19103
                                              Ph: 267.996.8231
                                              jmcnelis@constangy.com
                                              *Counsel for Defendant*
                                              *DTiQ Technologies, Inc.*

## CERTIFICATE OF SERVICE

     I, Christopher R. Deubert, hereby certify that on October 3, 2025, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF system and served upon counsel of record through the same.

                                              */s/ Christopher R. Deubert*
                                              Christopher R. Deubert, Esq.