UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH MORTON, *et al.*<br>*Plaintiff,*<br><br>v.<br><br>DTIQ TECHNOLOGIES, INC.,<br>*Defendants.* | Civil Action No.: 1:25-cv-12271-ADB |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant DTiQ Technologies, Inc. ("DTiQ" or "Defendant") seeks dismissal with prejudice of the Amended Class Action Complaint (Doc No. 17, "Complaint") filed by Plaintiffs Elizabeth Morton ("Morton"), Kevin O'Brien ("O'Brien"), and Christopher Crawley ("Crawley") (collectively, "Plaintiffs").

**I.  SUMMARY**

In December 2024, DTiQ was the alleged victim of a cybersecurity incident (the "Incident"), and Plaintiffs received notice that their personal information may have been involved. Plaintiffs Morton and O'Brien initiated this action on behalf of themselves and a putative class of similar individuals. *See* Doc. No. 1. On October 23, 2025, Plaintiffs filed an Amended Class Action Complaint, adding Plaintiff Crawley as a named Plaintiff. However, the Amended Complaint does not establish that any of the Plaintiffs have suffered cognizable harm that is traceable to the Incident, and therefore, Plaintiffs do not have Article III standing to maintain their claims.

Even if this Court finds that Plaintiffs have standing, the Complaint does not contain well-pleaded facts sufficient to establish the requisite elements of their purported causes of action. Thus, in the alternative, Defendant requests that the Court dismiss the Complaint for failure to state a claim under Rule 12(b)(6). For these reasons, this action should be dismissed in its entirety.

13780534v1

## II.  RELEVANT FACTUAL BACKGROUND[1]

### A.  The Alleged DTiQ Cyber Incident

DTiQ, located in Marlborough, MA, provides video surveillance and loss prevention solutions for businesses in the restaurant, retail, and convenience store industries. Compl. ¶¶ 1, 17, 21. In January 2025, DTiQ discovered suspicious activity in its computer network. Compl. ¶ 1, 3; Ex. A at 1. DTiQ secured its environment and launched an investigation of the Incident, which determined that the personal information of approximately 4,700 individuals was contained on impacted systems, including individuals' name, Social Security number ("SSN"), and bank account information. Compl. ¶ 3, Ex. B. On July 25, 2025, DTiQ notified individuals of the Incident and provided free access to credit monitoring and identity theft protection services. *Id.*

### B.  The Allegations of the Amended Complaint

#### 1.  Plaintiff O'Brien

Plaintiff O'Brien is a former employee of DTiQ who provided his name, SSN, and bank account information to DTiQ in connection with his employment. Compl. ¶¶ 60, 62. O'Brien was notified that his SSN and bank account may have been affected by the Incident. *Id.* Ex. B. As a result of the Incident, he alleges the following injuries or damages:

- "Defendant exposed Plaintiff O'Brien's PII for theft by cybercriminals and sale on the dark web." Compl. ¶ 65.
- "damages to and diminution in the value of his PII." *Id.* ¶ 67.
- "spent time and made reasonable efforts to mitigate the impact… [by]…researching the [Incident], reviewing credit card and financial account statements, and monitoring his credit information." *Id.* ¶ 68.
- "will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft." *Id.* ¶ 69.
- "increase in spam and scam phone calls and text messages…" *Id.* ¶ 70.
- "anxiety, sleep disruption, stress, fear, and frustration." *Id.* ¶ 72.
- "present and continuing risk of fraud, identity theft, and misuse…" *Id.* ¶ 73.

---

[1] For the purposes of this motion only, all well-pled facts of the Complaint are treated as true. However, DTiQ does not admit the truth of any allegations in the Complaint and cites them here solely for purposes of this Motion.

The Complaint asserts causes of action for Negligence, Compl. ¶¶ 199-219; Negligence *Per Se*, *Id*. ¶¶ 220-232; Breach of Implied Contract, *Id*. ¶¶ 187-201; Unjust Enrichment, *Id*. ¶¶ 202-206; and Invasion of Privacy, *Id*. ¶¶ 207-219[2] on behalf of Plaintiffs and the putative class.

### 2. Plaintiff Morton

Morton allegedly provided DTiQ with her name, SSN, and bank account information during her employment. Compl. ¶¶ 75, 77 72. Her claims concerning alleged damages largely mirror those of Plaintiff O'Brien. *See* Compl. ¶¶ 80, 82-88. She also claims that she experienced "attempts by an unknown third party (or parties) to make unauthorized payments…involving her Southwest Visa Credit Card." Compl. ¶¶ 82, 202. Notably, Plaintiff Morton does not allege or prove: (1) that any of these "attempts" were successful, (2) that she suffered any actual loss as a result of these attempts, (3) that DTiQ was in possession of information related to her Southwest Visa credit card, or (4) that the credit card was impacted by the Incident.

### 3. Plaintiff Crawley

Crawley is a former employee of DTiQ who provided his name, date of birth, SSN, and bank account information to DTiQ in connection with his employment. Compl. ¶¶ 93-94. Crawley last worked for DTiQ five years ago, in 2020. *Id*. ¶ 93. Crawley alleges that he has experienced fraud and identity theft based upon allegations of attempts to access one of his financial accounts, including an attempt to log on to the account, as well as his discovery that personal loans were applied for in his name. *Id*. ¶¶ 99-100. As a result, Crawley alleges that he has spent time responding to these incidents and has incurred costs associated with mailing letters to credit

---

[2] The Amended Complaint skips from ¶ 133 to ¶ 178 (omitting ¶¶ 134-177), *see id.* at p. 24 and continues from ¶ 187 - ¶ 232, *see id*. at pp. 24-32. The Amended Complaint then jumps back to a second ¶ 187, *see id*. at 32, and continues sequentially until the end of the Complaint, a second ¶ 219, *see id*. at pp. 32-36. All references in this Motion match the numbered paragraph designation in the Amended Complaint, despite these numbering errors.

bureaus regarding the fraud attempts. *Id.* ¶¶ 101-103. Crawley does not, however, allege that the loans were approved or that he suffered any financial harm from the alleged applications. Crawley also alleges that he began receiving calls from individuals attempting to collect money from him and emails notifying him of subscriptions that he did not sign up for." *Id.* ¶ 104.

### III.  ARGUMENT

#### A. Plaintiffs Lacks Standing to Pursue Their Damage Claims

##### 1. Legal Standard

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. *In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-MD-03083-ADB-PGL, 2024 WL 5092276, at *2 (D. Mass. Dec. 12, 2024) (Burroughs, J.) (citations omitted). To establish standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) ("To satisfy this standing requirement, a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability.").

Approximately one year ago, this Court described the proper legal standard for a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1):

> On a motion to dismiss for lack of subject matter jurisdiction ..., 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.' " *Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1, 4–5 (D. Mass. 2020) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)); *see also Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012) ("Article III standing presents a question of justiciability; if it is lacking, a federal court has no subject matter jurisdiction over the claim."). Dismissal is appropriate only when the well-pleaded allegations in the complaint, taken as fact and given all reasonable inferences, do

not support a finding of federal subject matter jurisdiction. *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009).

*In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *2 (footnote omitted).

### 2. Plaintiffs Have Not Alleged an Injury-in-Fact

To establish Article III standing, a plaintiff must allege an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). *See Kerin*, 770 F.3d at 981. "A concrete injury must be *de facto*; that is, it must actually exist" and it must be "real, and not abstract." *Id.* at 340 (internal citations and quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

#### i. *Actual Misuse of Data is Required to Establish Standing*

The Supreme Court, as well as courts in the First Circuit and this District, have held that a plaintiff *may* establish Article III standing by showing that their personal information has been misused as a result of the defendant's conduct. In *TransUnion, LLC v. Ramirez*, a class of 8,185 individuals brought claims against TransUnion for violation of the Fair Credit Reporting Act. Although TransUnion processed false and defamatory credit reports for all class members, it only disclosed the reports of 1,853 class members to third-party businesses. 141 S.Ct. 2190, 2200 (2021). The Supreme Court found that those class members had Article III standing, since their claims were akin to the common law tort of defamation. *Id.* at 2209. TransUnion had not disclosed the inaccurate reports of the remaining class members to any third parties, and although those class members contended that they were at risk of future disclosure, the Supreme Court found that they lacked standing. *Id.* The Supreme Court held that in a suit for damages, "the mere risk of future harm, without more, cannot qualify as a concrete harm" sufficient to establish standing. Id. at 2211 (emphasis added). Instead, a plaintiff must show that the harm actually materialized. *Id*.

Finally, the Supreme Court rejected the contention that the risk of future disclosure of an inaccurate credit report could serve as a concrete harm constituting an injury-in-fact:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does not materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*Id*. at 2211 (paraphrasing argument from TransUnion).

Subsequent data privacy cases applying *TransUnion* have held that a plaintiff must allege actual misuse of information involved in the incident to establish standing. In *Webb v. Injured Workers Pharm, LLC*, the First Circuit held that the named plaintiff plausibly alleged a concrete injury and had standing based upon her allegation that, "the data breach resulted in the misuse of her PII by an unauthorized third party (or third parties) to file a fraudulent tax return." 72 F.4th, 365, 373 (1st Cir. 2023). The court distinguished this allegation of actual harm from a prior First Circuit case—*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012). The plaintiff in *Katz* did not allege that her personal information had been accessed or misused, and therefore, her alleged injury was not actual or imminent. *See id*. at 79; *see also Webb*, 72 F. 4th at 373 ("We distinguished [*Katz*] from those in which confidential data actually <u>has been accessed</u> through a security breach and persons involved in that breach <u>have acted on the ill-gotten information</u>.") (emphasis added).

A few months after the First Circuit's decision in *Webb,* the United States District Court for the District of Massachusetts applied its guidance to another alleged data breach case. In *Taylor v. UKG, Inc.*, 2023 WL 8291834 (D. Mass. Sept. 15, 2023), the court dismissed the plaintiffs' claims, holding that "without any allegation of actual misuse of information from the [ ] data breach, Plaintiffs' alleged risk of future misuse is not sufficiently imminent or substantial to support standing." *Id.* at *6. Similar claims were dismissed in *Hartigan v. Macy's, Inc.*, 501 F.

6

Supp. 3d 1 (D. Mass. 2020), where a customer brought claims against Macy's after a criminal cyberattack exposed customer information. The court dismissed the plaintiff's claims, finding that he had "not alleged sufficient facts to support a substantial risk of future harm" necessary to support his claim "under the caselaw most generous" to plaintiff. *Id.* at 5.

In the case at bar, Plaintiffs Morton and O'Brien do not plausibly allege misuse of any of their information. O'Brien does not allege that he has suffered any instance of identity theft or fraud since the Incident. Morton's allegations of "attempts" at fraudulent charges to her credit card merely establish the misuse of that credit card, Compl. ¶¶ 82, 202; they do **not establish misuse of data that was involved in the Incident**. The Complaint makes no allegation that she ever provided credit card information to DTiQ, much less the specific Southwest Visa card at issue. *See id*.

> ii.  *Alleged Misuse of Information Must be Traceable to the Incident*

As this Court noted, "plaintiffs asserting federal standing must also plausibly allege that their injury is fairly traceable to the challenged action of the defendant." *In re MOVEit*, 2024 WL 5092276, at *11 (quoting *Lujan*, 504 U.S. at 560). "The traceability or causation element requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." (citing *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, LLC*, 958 F.3d 38, 47 (1st Cir. 2020); *Katz*, 672 F.3d at 71)). In *Harvey v. Nat'l Amusements, Inc.*, 2025 WL 928776 (D. Mass. Mar. 27, 2025), the court dismissed a data breach class action complaint for lack of standing where the allegation of data misuse was implausible and therefore failed the "traceability" requirement. 2025 WL 928776, at *3. There, the sole allegation related to the fraudulent filing of an LLC in plaintiff's name, but the complaint did not, "allege that [plaintiff] provided [defendant] with his mailing address…a necessary piece of information to create an LLC." *Id*. *See also Scifo v. Alvaria, Inc.*, No. 23-10999, 2024 WL 4252694, at *4 (D. Mass. Sept.

7

20, 2024) (Burroughs, J.) (holding plaintiff failed to establish "traceability" where information involved did not bear a plausible connection to the harm alleged).

Plaintiff Morton is in the same position as the plaintiff in *Scifo*, *supra* (and other similarly dismissed cases) in that there is no plausible connection between the Incident and the alleged, attempted, fraudulent charges to her Southwest Visa card. Accordingly, Morton's alleged injuries are not traceable to the Incident and are insufficient to confer standing.

Plaintiff Crawley's allegations are more extensive than the other two Plaintiffs, but he still falls short of establishing a plausible connection between his allegations and the Incident. Crawley alleges that his "PII"—which the Complaint defines as "name, social security number, and financial account information," Compl. ¶ 3—was used to apply for loans in his name. However, a criminal would need vastly more than an individual's name, SSN, and a single bank account number in order to apply for a personal loan. Concluding that these loan applications were caused by the Incident would require assuming, *inter alia*, that (1) a criminal obtained Crawley's PII as a result of the Incident, (2) the criminal was able to gather all of the other information *and documents* required to apply for the loan, and (3) the same individual/entity actually submitted the applications referenced in the Complaint. *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 48 (1st Cir. 2020) ("The Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties."); *Delaney v. Baker*, 511 F. Supp. 3d 55, 68 (D. Mass. 2021) ("an injury is less likely to satisfy [the traceability] requirement where the causal chain between the defendant's action and the alleged harm depends on actions of a third party").[3]

---

[3] In the *MOVEit* decision, this Court took issue with similar arguments by the defendants in their Motion to Dismiss. *See* 2024 WL 5092276, at *11-12. There, the Complaint included an allegation that one of the plaintiffs suffered an attempted instance of identity theft when an unauthorized person applied for a loan in his name, and the Court noted that the information impacted by the underlying incident could have assisted the criminal actors. *See id*.

### iii. Plaintiffs Cannot Establish Any "Risk of Harm" Sufficient to Confer Standing

The *Webb* court held that in the absence of actual misuse, a plaintiff may establish standing by plausibly alleging, "the material risk of future misuse of [plaintiff's] PII and a concrete harm caused by exposure to this risk." *In re MOVEit*, 2024 WL 5092276, at *4 (citing *Webb*, 72 F.4th at 374.). Whether the plaintiff can meet this burden depends upon the totality of the circumstances, but particularly on a consideration of three factors:

1) Whether the data at issue was stolen in a targeted attack;
2) Whether some of the information has already been misused; and
3) Whether the stolen data was highly sensitive.

*See Webb*, 72 F.4th at 375-76.

Even providing Plaintiffs with all reasonable inferences, their Complaint fails to establish the first two factors. First, the Complaint is devoid of detailed allegations about the Incident, such as the identity of the criminal actors involved, the method or type of cyberattack, and whether any information was actually accessed or stolen.[4] Next, as set forth in the previous section, the Complaint does not establish any misuse of the Plaintiffs' personal information that is traceable to the Incident. Even if Defendant concedes that the data at issue here—name, SSN, bank account information—is highly sensitive, that fact cannot allow Plaintiffs to establish standing in light of the analysis of the other two factors. If the third factor alone was sufficient to establish standing, the first two factors would be rendered useless and superfluous, an absurd result that ignores the totality of the circumstances and the reasoned analysis regularly conducted by this and other courts.

---

at 11. However, here, Plaintiff Morton does not allege that her personal information was misused in order to *apply* for the credit card at issue; and Plaintiff Crawley only alleges in a conclusory fashion that these applications were casually connected to the Incident—he does not explain *how* the Incident is causally connected to the loan applications or sufficiently address the chain of additional events required to establish a plausible connection.

[4]   By contrast, the complaint in such cases often alleges the identity of the "threat actor" group responsible for the attack, the methods used by the threat actor to conduct the attack and/or access the defendant's network, and evidence of the group's *modus operandi*, which may allow the parties and the court to assess the risk of harm related to the incident. *See, e.g. In re MOVEit*, 2024 WL 5092276, at *5.

### B. Plaintiffs Do Not Have Article III Standing to Seek Injunctive Relief

In their Complaint, Plaintiffs make passing reference to potential injunctive relief and appear to seek such relief. *See* Compl. ¶¶ 111, 174; Prayer For Relief, p. 20. Despite their failure to articulate the nature of the relief sought or a connection between injunctive relief those and the Incident, Defendants assume for purposes of this Motion that the Complaint affirmatively seeks some form of injunctive relief. As with Plaintiffs' substantive claims for damages, any claims for injunctive relief must be dismissed for lack of Article III standing.

"Standing for injunctive relief depends on whether [the plaintiffs are] likely to suffer future injury." *Webb*, 72 F.4th at 378 (quoting *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 276 (1st Cir. 2022); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). As noted above, Plaintiffs have not suffered identity theft, fraud, or any other materialized harm. Additionally, the three-factor analysis the court may conduct pursuant to *Webb* leads to the conclusion that any risk of harm to Plaintiffs is not imminent or substantial. As the Supreme Court explained in *TransUnion*, a plaintiff may rely on a potential future injury to establish standing to seek "forward-looking" injunctive relief, "at least so long as the risk of harm is sufficiently imminent and substantial." 141 S. Ct. at 2210 (internal citations omitted). Defendants have established herein that Plaintiffs' risk of harm as a result of the Incident is not "substantial and imminent" and Plaintiffs have not identified any "forward-looking" relief that would potentially alleviate any purported risk. Consequently, Plaintiffs do not have standing to pursue injunctive relief. *See Campos v. TJX Companies, Inc.*, No. 24-CV-11067-ADB, 2025 WL 360677, at *3 n.1 (D. Mass. Jan. 31, 2025) ("Plaintiff has not alleged any facts to indicate that [defendant's] behavior presents a risk of future harm, as all of the alleged conduct has occurred in the past. As such, Plaintiff lacks standing to

pursue injunctive relief…"); *Webb,* 72 F.4th at 378 ("plaintiffs lack standing to pursue [injunctive] relief because their requested injunctions are not likely to redress their alleged injuries.")

### C. Plaintiffs Have Failed to State Claims Upon Which Relief Can Be Granted

Even if the Court were to determine that Plaintiffs had standing, the Complaint must be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to sufficiently state their claims.

#### 1. Plaintiffs Have Failed to State a Claim for Negligence

To prevail on a negligence claim, the plaintiff must prove that (1) the defendant owed the plaintiff a duty of reasonable care, (2) the defendant breached that duty, (3) damage resulted, and (4) that there was a causal relationship between the breach of the duty and the damage. *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 39 (2009). Plaintiffs' negligence claim fails because (i) Plaintiffs cannot satisfy the third and fourth elements without actual injury, (ii) it is barred by the economic loss doctrine, and (iii) Plaintiffs have not alleged physical harm manifested by objective symptomatology sufficient to sustain a claim based upon their alleged feelings of "anxiety, sleep disruption, stress, fear and frustration." Compl. ¶¶ 72, 90, 109, 113.

As an initial matter, as explained above, Plaintiffs have not pled actual damages or drawn a plausible connection between the Incident of the conduct of Defendant and any actual injury or damages. Under such circumstances, they cannot sustain a claim for negligence. *Harvey supra*, 2025 WL 928776, at *3 (dismissing negligence claim for failure to trace alleged injuries to data security incident); *Cannon v. Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978) ("negligence requires that both negligence and harm be shown, with a causal connection between these two elements."); *Bernal v. Weitz*, 54 Mass. App. Ct. 394, 396 (2002) ("Actual damages or loss are an essential element of the tort of negligence").

Next, Plaintiffs' negligence claim is also barred by the economic loss doctrine. "[T]he economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 469 (2009). "[P]urely economic losses are unrecoverable in tort… actions." *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993). Plaintiffs have not alleged any physical harm or property damage and thus they cannot state a claim for negligence.

Finally, the vague and unsupported allegations of "anxiety" and "stress" cannot save Plaintiffs. In making such claims, Plaintiffs are actually asserting a claim of negligent infliction of emotional distress ("NIED"). In order to recover for NIED, a plaintiff must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 133 (1993), (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). The Supreme Judicial Court explained that it

> added the physical harm requirement to the traditional elements of negligence for several reasons. First, we feared that allowing recovery for mental harm alone might result in a flood of fraudulent claims. Second, we expressed concern that even honest plaintiffs erroneously might convince themselves that they suffer from emotional distress as a result of the negligence of others, thereby compounding the problem of fraudulent lawsuits. Finally, we reasoned that the unintentional nature of the defendant's tortious conduct justified the imposition of an additional legal burden on the plaintiffs.

*Sullivan, supra* (internal citations omitted). For these reasons, a "successful negligent infliction of emotional distress claim… must do more than allege mere upset, dismay, humiliation, grief and anger." *Id.* at 137 (citation omitted). Such a claim "requires specific factual allegations, not a mere 'formulaic recitation of the elements.'" *Hindle v. Toyota Motor Credit Corp.*, 2018 WL 6033484, at *4 (D. Mass. Nov. 16, 2018) (quoting *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiffs cannot establish a claim for negligence or NIED, and the Supreme Judicial Court's warnings about frivolous litigation are particularly apt here. Specifically, none of the Plaintiffs have pled physical harm manifested by objective symptomatology. The Court should not be sidetracked by Plaintiffs' subjective and vague statements of emotional distress – courts, as should be the case here, regularly dismiss similar unsupported allegations. *See Arroyo v. City of Boston*, 2021 WL 2338879, at *8 (D. Mass. June 8, 2021); *Axford v. TGM Andover Park, LLC*, 2021 WL 681953 (D. Mass. Feb. 22, 2021); *Nasir v. Town of Foxborough*, 2020 WL 1027780, at *5 (D. Mass. Mar. 3, 2020); *Hindle, supra*; *Doe v. Emerson Coll.*, 153 F. Supp. 3d 506, 517 (D. Mass. 2015); *Pierre v. U.S.*, 741 F. Supp. 306, 313 (D. Mass. 1990). For all of the above reasons, Plaintiffs' negligence claim must be dismissed.

### 2. Plaintiffs Have Fail to State a Claim for Negligence *Per Se*

Count II of the Complaint asserts a claim on behalf of Plaintiffs and the putative class for Negligence *Per Se*. Complaint ¶¶ 220-232. However, it is well-settled that Massachusetts law does not recognize negligence *per se* as a separate cause of action. *Juliano v. Simpson*, 962 N.E.2d 175, 179 (Mass. 2012) ("The Commonwealth does not follow the doctrine of negligence per se[.]"). Therefore, Count II of the Complaint should be dismissed with prejudice. *See Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 149 (D. Mass. 2024) (dismissing negligence *per se* claim because, "Massachusetts does not recognize negligence per se as an independent cause of action").

### 3. Plaintiffs Have Failed to State a Claim for Breach of Implied Contract

"[A]n implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties." *T.F. v. B.L.*, 442 Mass. 522, 526-527 (2004). To prevail on a claim for breach of implied contract, a plaintiff must provide "proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant

13

expected, or a reasonable person should have expected that he or she would have to pay for that benefit." *Id.* "A contract implied in fact requires the same elements as an express contract and differs only in the method of expressing mutual assent." *Mass. Eye & Ear Infirmary v. QLT Phototerapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (quotation omitted).

Plaintiffs allege that they provided their private information to DTiQ in as a condition of their employment. Compl. ¶ 188. Based on this exchange, DTiQ allegedly promised and represented that they would safeguard Plaintiffs' information. Compl. ¶ 189. While such allegations may be accepted as true, they are insufficient to demonstrate there was a bargained for exchange between any of the Plaintiffs and DTiQ.

The decision on remand in *Webb v. Injured Workers Pharmacy, LLC* is instructive. There, plaintiffs alleged a cause of action for breach of implied contract arising out of the alleged exposure of their personal health information by the defendant pharmacy. The court dismissed this cause of action because "there is no allegation that [defendant] agreed – explicitly or implicitly – to provide such protection" of their personal information. 2023 WL 5938606, at *3 (D. Mass. 2023).

A similar result was reached in *Weekes v. Cohen Cleary P.C.* The court dismissed a breach of implied contract claim where a plaintiff alleged that "defendant law firm required her to disclose PII and PHI as a condition of its representation" but made "no allegation, however, that either party ever discussed the manner of safeguarding the PII and PHI or that plaintiff had a particular concern about disclosing that information." 2024 WL 1159642, at *5 (D. Mass. Mar. 15, 2024); *see also Harvey*, *supra,* 2025 WL 928776 at *3 (dismissing breach of implied contract claim because "plaintiffs fail to allege sufficient facts, such as commitments made in company documents or policies, evidencing a meeting of the minds or mutual intent to support the purported implied contract terms that they provided their PII 'as a condition of employment' and that '[i]n

14

return, Defendant agreed it would not disclose the PII it collects to unauthorized persons,'").

The same is true here. Nowhere in the Complaint do Plaintiffs refer to any actual conduct by DTiQ in which DTiQ represented that Plaintiffs' information would be kept safe. Instead, Plaintiffs' Complaint simply asserts Defendant made a promise without any further specifics as to how or when that promise was made. The claim must therefore be dismissed.

Courts across the country have regularly reached the same conclusion in data privacy cases. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 51 (D. Ariz. 2021); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *20 (D.N.J. Dec. 16, 2021); *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015); *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013).

Even if the Court found that mutual assent existed to create a contract between the parties, the Complaint is devoid of any facts showing that Plaintiffs incurred damages. Like an express contract, a finding for a breach of implied contract requires a plaintiff to prove damages. *Katz v. Pershing*, LLC, 806 F. Supp. 2d 452, 460 (1st Cir. 2011) ("To allege an implied-in-fact contract, a plaintiff must plead the elements of an express contract, including consideration, mutual assent and damages."). In data breach cases courts have required plaintiffs to "allege more than legal conclusions and vague statements to establish actual damages to support [a] breach of contract" claim. *Sallie Holly v. Alta Newport Hosp., Inc*, 2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020); *see also Burns v. HSBC Bank*, 2013 WL 12136377, at *5 (C.D. Cal. Aug. 26, 2013) ("vague and conclusory statements regarding damages are insufficient to survive a motion to dismiss."). Similarly, Plaintiffs' Complaint lacks supporting facts to establish any alleged damages caused by the Incident. Accordingly, their breach of implied contract claim must be dismissed.

### 4. Plaintiffs Have Failed to State a Claim for Unjust Enrichment

Massachusetts defines unjust enrichment as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005) (quoting *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982)). A plaintiff must establish that "not only that the defendant received a benefit, but also that such as benefit was unjust." *Webb*, 2023 WL 5938606, at *4 (quoting *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013)).

Plaintiffs' unjust enrichment claim tracks the claim dismissed in *Webb*. There, the plaintiffs alleged that "their payments for pharmaceutical services implicitly included the costs entailed in the protection of their PII." 2023 WL 5938606, at *4. As a result, the defendant was allegedly unjustly enriched because it did not take "adequate steps to secure [plaintiffs'] data." *Id.* The court disagreed and dismissed the plaintiffs' unjust enrichment claim, reasoning that the "Plaintiffs paid [defendant] for (and received) pharmaceutical services; they do not allege they paid separately for storage of their PII." *Id.* The same is true here and thus the same result is required. *See also Harvey*, *supra,* 2025 WL 928776 at *4 (dismissing unjust enrichment claim because "the plaintiffs do not allege that [defendant] gained any benefit from storing the PII, nor did it gain an identified benefit by exposing plaintiffs' PII to misuse by an unknown person").

Moreover, Plaintiffs' assertions mischaracterize the import of their personal information in the employment context. Compl. ¶ 204. Even if the Plaintiffs provided their personal information as condition of their employment, they have not explained how providing that information constitutes a "benefit" to DTiQ. DTiQ collected that information for business and operations purposes, such as payroll and other administrative functions. DTiQ did not otherwise receive any direct benefit from this information. While their information was necessary for the overall

operation of DTiQ's business, Plaintiffs' incentive for providing their information to DTiQ was not for DTiQ's data security, but rather for the promise of employment and compensation. Even if providing their information constituted some distinct benefit, Plaintiffs received consideration for any such benefit by virtue of their compensation received from DTiQ.

A claim for unjust enrichment cannot exist where the plaintiff received the benefit to which they were entitled and the defendant did not unfairly receive their end of the bargain. Most importantly, Plaintiffs have not alleged the concrete damages necessary to support any contract or unjust enrichment claim. Their allegations of speculative future harm and/or unrelated occurrences of fraud cannot establish the actual damages required for these claims. Applying these principles here, the court should dismiss Plaintiffs' fourth cause of action for unjust enrichment.

### 5. Plaintiffs Have Failed to State a Claim for Invasion of Privacy

Count V of the Complaint asserts a claim for Invasion of Privacy. Compl. ¶¶ 207-219. Plaintiffs allege that they provided their sensitive personal information to DTiQ and had a reasonable expectation of privacy with regard to that information. Compl. ¶ 208. Further, they allege that Defendant owed them a duty to safeguard their information, but that the Incident resulted in the unauthorized acquisition of that information, which is, "highly offensive to a reasonable person." Compl ¶¶ 209-210.

"Massachusetts has never recognized a common-law cause of action for invasion of privacy, but recognizes an actionable right of privacy under the privacy statute." *Webb v. Injured Workers Pharmacy, LLC*, No. 22-CV-10797, 2023 WL 5938606, at *4 (D. Mass. Sept. 12, 2023) (quoting *Axford v. TGM Andover Park, LLC*, 2021 WL 681953, at *13 (D. Mass Feb. 22, 2021)). The relevant statute is Mass. Gen. Laws ch. 214, § 1B, which provides that, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."

A claim for statutory invasion of privacy requires proof that the defendant gathered and disseminated facts of a private nature, resulting in an unreasonable, substantial, or serious interference with the plaintiff's privacy. *Burns v. City of Worcester*, 772 F. Supp. 3d 109, 144 (D. Mass. 2025) (citing *Branyan v. Sw. Airlines Co.,* 105 F. Supp. 3d 120, 126 (D. Mass. 2015); *Nelson v. Salem State Coll.*, 446 Mass. 525, 845 N.E.2d 338, 348 (2006)). Invasion of privacy is an intentional tort. *Webb*, supra, at *4 (citing *Elliot-Lewis v. Abbott Lab'ys*, 378 F. Supp. 3d 67, 71 (D. Mass. 2019); *White v. City of Boston*, 2022 WL 2704404, at *10 (D. Mass. July 12, 2022)). Courts in data breach class action matters routinely dismiss common law claims for invasion of privacy because the alleged harm did not result from any intentional act by the defendant. *See*, *e.g.*, *Harvey, supra*, 2025 WL 928776 at *4 (invasion of privacy claims should be dismissed "when the complaint only alleged that unauthorized third parties, rather than the party tasked with storing their information, disseminated a consumer's private information"); *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 164 (D. Mass. 2024) ("Plaintiffs' claim does not pass muster because Plaintiffs allege only that <u>hackers</u> disseminated their private information and intruded on their privacy, not that [<u>Defendant</u>] did.") (emphasis in original); *Webb*, *supra*, at *4 (dismissing invasion of privacy claim where the plaintiff, "fails to allege any intentional acts on the part of [defendant] that could be said to have been the legal cause of the dissemination").

The result here should be no different. Even providing Plaintiffs and the allegations of the Complaint all reasonable inferences, Defendant's alleged conduct was, at worst, negligence. Such conduct is insufficient to establish the intentional tort of Invasion of Privacy or any claim under Mass. Gen. Laws ch. 214, § 1B. Therefore, Count V of the Complaint should be dismissed.

## IV. CONCLUSION

As Plaintiffs implicitly admit, they fortunately have not suffered any actual injury as a result of the Incident. Without actual damages suffered by the Plaintiffs that can plausibly be traced to the Incident, they lack standing and cannot state a claim for monetary or injunctive relief. Their claims are otherwise insufficiently pled or unsupported by plausible allegations. For these reasons, the case should be dismissed, with prejudice.

Respectfully Submitted,

Dated: November 20, 2025

**CONSTANGY, BROOKS, SMITH & PROPHETE LLP**

*/s/ Christopher R. Deubert*
Christopher R. Deubert
800 Boylston St., Suite 1005
Boston, MA 02199
Ph: 617.849.7880
cdeubert@constangy.com

Joseph McNelis (*Pro Hac Vice*)
1650 Market St., 36th Floor
Philadelphia, PA 19103
Ph: 267.996.8231
jmcnelis@constangy.com

*Counsel for Defendant
DTiQ Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

    I, Christopher R. Deubert, hereby certify that on November 20, 2025, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF system and served upon counsel of record through the same.

                                    */s/ Christopher R. Deubert*
                                    Christopher R. Deubert, Esq.

13780534v1